UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
THEODORE SMITH,

               Plaintiff,

          - against -

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, NEW YORK CITY
DEPARTMENT OF INVESTIGATION, SPECIAL
COMMISSIONER OF INVESTIGATION FOR THE NEW
YORK CITY SCHOOL DISTRICT,

              Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

14 Civ. 2690 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     In this 42 U.S.C. § 1983 action brought against defendants the City of New York (or "City"), the New York City Department of Education ("DOE"), and related entities, plaintiff Theodore Smith, a former New York City schoolteacher, claims that defendants retaliated against him in violation of the First Amendment after he began to complain about overenrollment in his physical education classes.  Smith also asserts claims for breach of contract and a violation of the Employee Retirement Income Security Act of 1974 ("ERISA").  Defendants move under Rule 12(b)(6) to dismiss all claims for a variety of reasons, including the res judicata effect of Smith's prior federal case, failure to state a claim upon which relief can be granted, and the applicable statutes of limitations.  For the reasons that follow, the motion is granted.

## I.   BACKGROUND

This is not Smith's first legal challenge to his discipline and termination from employment as a New York City teacher.   A prior federal case in this Court, No. 06 Civ. 4613 (NRB), ended in summary judgment for the DOE and other defendants.   See Smith v. N.Y.C. Dep't of Educ., 808 F. Supp. 2d 569 (2011) ("Smith I").   Smith's claims in both federal cases have been bound up with the decisions in two hearings conducted pursuant to Section 3020-a of the New York Education Law, which provides for formal disciplinary hearings on charges brought against tenured teachers.   As described below, the first § 3020-a hearing resulted in Smith's suspension without pay for one year, and the second resulted in Smith's dismissal.   The state courts affirmed both decisions.[1]

## A.   Proceedings in This Case

### 1.   The Second Amended Complaint

The operative complaint in the instant case is the Second Amended Complaint dated September 4, 2014 ("Complaint" or "Compl."), which was submitted by counsel.   The Complaint's

---

[1]     Judicial notice is taken of the record in the prior federal case and of the decisions of the § 3020-a hearing officers and of the state courts on appeal from those decisions.   See Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992); World Wrestling Entm't v. Jakks Pacific, Inc., 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006), aff'd, 328 F. App'x 695 (2d Cir. 2009).

general premise is that "immediately following [Smith's] lawful complaints concerning the safety of students placed in dangerously oversized classes . . . [Smith] was subject to a targeted campaign of retaliation." (Compl. ¶ 2.) The Complaint's main factual allegations, supplemented for narrative clarity with the results of the § 3020-a hearings, are as follows.

The DOE hired Smith as a teacher in 1995 and awarded him tenure in 1998. (See Compl. ¶ 1.) In 2004, Smith accepted a position teaching physical education and health classes at the New York City Museum School (the "Museum School"), where he hoped to be promoted to assistant principal. (See id. ¶ 14.) But Smith's prospects deteriorated quickly after Smith complained to the Museum School principal, Lindley Uehling,[2] about the size of the enrollment in his classes, telling Uehling that it was unsafe to "cram[] over a hundred students into [Smith's] classroom." (Id. ¶ 14.) Immediately thereafter, "[d]efendants began conspiring against [Smith] and sabotaging his personnel file" so that Smith would be "terminated before the problem regarding the classrooms was exposed." (Id. ¶ 16; see id. ¶ 15.) In particular, Uehling "continuously placed disciplinary letters in [Smith's] file." (Id. ¶ 16.) Things got worse after Smith complained to the DOE, to his union, and

---

[2]    Neither Uehling nor any other individual is named as a defendant.

to then-Mayor Michael Bloomberg and then-Schools Chancellor Joel Klein.  (See id.) "[I]n 2005, after ten years of satisfactory service[,] [Smith] received his first U-rating."[3]  (Id.)  In September 2005, Smith was assigned to "the notorious Teacher Reassignment Center, also known as the 'Rubber Room.'"  (Id. ¶ 17.)

In September 2006, disciplinary charges were brought against Smith.  (See id. ¶ 19.)  During the § 3020-a hearing on these charges, Smith was asked to sign an agreement accepting the unsatisfactory rating and giving up his rights to an appeal.  (See id. ¶ 20.)  Smith refused this, which displeased his attorney, David Kearney, so much that Kearney began to "sabotage" Smith.  (Id.)  In particular, Kearney "falsely accused [Smith] of threatening [Kearney's] life and that of the arbitrator reviewing his case."  (Id. ¶ 20.)  Smith also wrote to the arbitrator,[4] Jack Tillem,[5] that Tillem was "prejudiced against him."  (Id. ¶ 21.)  Tillem subsequently recused himself.  (See id. ¶ 22.)  In December 2007, the arbitrator who replaced Tillem found Smith culpable of many of the charges against him and decided that Smith would be suspended for one year without pay.  (See Declaration of Sarah B. Evans, Esq., dated Jan. 9,

---

[3]    The term "U-rating," which is not defined in the Complaint, appears to be shorthand for an "unsatisfactory" performance rating.

[4]    The terms "arbitrator" and "hearing officer" are used interchangeably to refer to the neutrals who preside over § 3020-a hearings.

[5]    Tillem's first name, which is not in the Complaint, is found in Smith's memorandum of law and elsewhere in the records of this case and of Smith I.

2015 ("Evans Decl."), Ex. D, at 77.) Although Smith successfully challenged this decision in state Supreme Court, the DOE appealed and the Appellate Division reinstated the decision. See In re Smith v. N.Y.C. Dep't of Educ., 67 A.D.3d 555 (1st Dep't 2009), lv. denied, 14 N.Y.3d 705 (2010).

In the meantime, in May 2007, Smith filed a complaint with the Special Commissioner of Investigation for the New York City School District ("SCI"), in which he alleged misconduct by defendants and Kearney. (See Compl. ¶ 23.) SCI interviewed Smith without questioning him on Kearney's allegations that Smith had made threats against Kearney and Tillem, but then SCI produced a "false report" concluding that it was credible that Smith had made such threats. (See id. ¶¶ 25-27.) Based on SCI's false report, a second set of disciplinary charges was lodged against Smith. (See id. ¶ 27.) On June 1, 2010, the arbitrator in the second § 3020-a hearing decided that "Smith[] uttered death threats against [Tillem]," and that "[s]uch threats constituted just cause for . . . dismissal from service." (Evans Decl. Ex. F, at 50.) That month, Smith was terminated from employment. (See Compl. ¶ 27.) The state courts upheld this decision. See In re Smith v. N.Y.C. Dep't of Educ., 109 A.D.3d 701 (1st Dep't), lv. denied, 22 N.Y.3d 856 (2013).

Based on these factual allegations, the Complaint asserts three claims against defendants.   First, it asserts a claim under 42 U.S.C. § 1983 that defendants violated the First Amendment by retaliating against him for "lawful public speech about matters of public concern." (Compl. ¶ 39.)   Second, Smith claims breach of express and implied contract, contending that defendants' anti-retaliation policies constituted a "de facto contract" and that he relied on those policies to his detriment. (See id. ¶¶ 41-43; see also id. ¶ 32 ("[P]olicies promulgated both by the DOE and SCI expressly prohibit retaliation against any individual who engages in protected conduct.").)   Third, Smith claims that defendants violated section 510 of ERISA by terminating him with "an invidious motive to preclude [Smith] from obtaining his full retirement pension." (Compl. ¶ 46; see also id. ¶ 29 (Smith was denied "back-pay to which he was entitled in connection with his retirement").)

## 2.  Procedural History

Following an exchange of pre-motion letters but before defendants' motion was filed, Smith discharged his counsel in this action.   On January 9, 2015, defendants filed the instant motion to dismiss and supporting papers.   On April 9, 2015, Smith filed pro se opposition papers.   On April 23, 2015,

defendants filed a reply memorandum.   On July 27, 2015, Smith filed a supplemental pro se letter.[6]


## B.   Prior Litigation

Smith's prior case in this Court (i.e., Smith I) was commenced on June 15, 2006.   That case was stayed and then dismissed without prejudice in light of the first disciplinary proceeding against Smith.   However, it was later reinstated and, following a summary judgment motion, judgment was entered on a second amended complaint dated June 2, 2010 (the "Prior Complaint" or "Pr. Compl.").[7]   The defendants named in the Prior Complaint were the DOE, Chancellor Klein, and two SCI officials.[8]

---

[6]   During the briefing, Smith also filed a pro se motion for recusal. That motion was previously denied, as was Smith's subsequent motion for reconsideration.

[7]   Both sides mistakenly identify an amended complaint dated January 10, 2010 as the operative complaint in the Smith I litigation.   Although the January 10, 2010 complaint was the last properly filed complaint, neither the parties to Smith I nor the Court treated it as the operative complaint in connection with defendants' summary judgment motion.   As explained in the Smith I opinion, on June 10, 2010, the Court gave Smith's counsel leave to file the second amended complaint dated June 2, 2010, but Smith's counsel never did so.   The defendants nonetheless briefed their ultimate motion for summary judgment on the basis of the June 2, 2010 complaint, which they submitted in support of that motion.   Accordingly, the Court deemed the June 2, 2010 complaint to be the operative complaint.   The Court expressly rejected a revised "second" amended complaint dated July 14, 2010, which Smith submitted in opposition to the summary judgment motion without seeking leave to amend.   See Smith I, 808 F. Supp. 2d at 574 n.2.   The June 2, 2010 second amended complaint (the "Prior Complaint") is filed as Exhibit B to the Declaration of Isaac Klepfish, Esq., dated November 8, 2010 (Doc. No. 20 in 06 Civ. 4613).   The July 14, 2010 "second" amended complaint that was rejected by the Court is filed as Exhibit A to the Affirmation of Robert S. Lewis, Esq., filed January 11, 2011 ("Lewis Aff.," Doc. No. 25 in 06 Civ. 4613).

[8]   Earlier complaints in the Smith I case named different individual defendants, including but not limited to Uehling and Kearney.

In Smith I, Smith asserted claims under the Americans with Disabilities Act, the New York Whistleblower Law, the Age Discrimination in Employment Act, the New York Labor Law, the New York Executive Law, the New York City Administrative Code, and the common law of libel, and under 42 U.S.C. § 1983 for the violation of due process.   More specifically, as summarized in the Smith I opinion, Smith contended:

> that he was discriminated against and retaliated against on the basis of his disability, age, and union membership; that he was retaliated against for complaining about the large physical education class sizes at the Museum School; that defendants defamed him by publishing the SCI's investigative findings regarding Smith's alleged threat against Hearing Officer Tillem, by circulating statements that Smith was "incompetent," "unprofessional," and "irresponsible," and by placing statements in Smith's personnel file that he was "faking" his illness; and that defendants deprived Smith of due process by stigmatizing him and by removing him from the classroom and docking his pay without a hearing.

Smith I, 808 F. Supp. 2d at 577.

The defendants moved for summary judgment, arguing, inter alia, that the decision in the first § 3020-a hearing barred Smith's federal claims by collateral estoppel.   On July 18, 2011, the defendants' motion for summary judgment was granted in its entirety.   See id. at 584.   As discussed in Part III.B.2 below, the Court ruled, as to the federal statutory claims, that the factual findings of the § 3020-a arbitrators precluded Smith

from making out prima facie cases of employment discrimination and retaliation.  Smith did not appeal.

## II. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  See Krys v. Pigott, 749 F.3d 117, 128 (2d Cir. 2014).  However, "we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)).  To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 at 678 (quoting Twombly, 550 U.S. at 570).

In evaluating the sufficiency of a pleading to state a claim, a "court may consider the facts alleged in the pleadings, documents attached as exhibits, and documents incorporated by reference in the complaint," DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010), as well as "matters of which judicial notice may be taken," Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).  Similarly, a court may consider a res judicata or collateral estoppel defense on a Rule 12(b)(6) motion when the court's inquiry is "limited to the plaintiff's

complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014); see, e.g., Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014).


### III. DISCUSSION

Defendants' principal arguments are (A) that the City is an improper defendant; (B) that the Smith I decision bars Smith's present claims by res judicata or collateral estoppel; (C) that the Complaint fails to state a § 1983 or ERISA claim upon which relief can be granted; and (D) that the § 1983 and breach-of-contract claims are barred by applicable statutes of limitations. In light of Smith's pro se status, we decline to treat Smith's failure to respond to some of these points as concessions, and we construe his arguments liberally.[9]


**A. Party Status of the City and City Agencies**

Defendants argue that the City is an improper party because Smith was employed by the Department of Education, an independent entity. It is well established that "[t]he City and the DOE are separate legal entities." Sotomayor v. City of

---

[9]     Nonetheless, it is noted that much of Smith's memorandum of law comprises a recitation of facts that are neither found in his Complaint nor relevant to the defendants' arguments.

<u>N.Y.</u>, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012), <u>aff'd</u>, 713 F.3d 163 (2d Cir. 2013); <u>see, e.g.</u>, <u>Perez ex rel. Torres v. City of N.Y.</u>, 41 A.D.3d 378, 379 (1st Dep't 2007). Accordingly, "[c]ourts have consistently rejected the argument that teachers may sue the City on the basis of their employment by the NYCDOE." <u>Williams v. City of N.Y.</u>, No. 12 Civ. 8518 (RJS), 2014 WL 1383661, at *8 (S.D.N.Y. Mar. 26, 2014), <u>aff'd</u>, 602 F. App'x 28 (2d Cir. 2015).

However, Smith also names as defendants the Special Commissioner of Investigation for the New York City School District ("SCI") and the New York City Department of Investigation ("DOI"). Smith alleges that "SCI submitted a false report" concluding that Kearney's allegation against Smith was credible. (Compl. ¶ 25.) The SCI is a component of the DOI, a City agency that is independent of the DOE. (<u>See</u> Compl. ¶ 9.)[10] City agencies like the SCI and the DOI lack independent legal existence and lack capacity to be sued. <u>See</u> <u>Ximines v. George Wingate High Sch.</u>, 516 F.3d 156, 160 (2d Cir. 2008). Thus, "[t]he City is . . . the appropriate entity to be sued for the acts of the [DOI] and its subdivision SCI and their

---

[10]    <u>Accord</u> DOI's website at http://www.nyc.gov/html/doi/html/sci/sci.shtml (last visited Sept. 1, 2015) ("The Special Commissioner of Investigation for the New York City School District is a unit of DOI that operates independently of the Department of Education."); SCI's website at http://www.nycsci.org (last visited Sept. 1, 2015) ("SCI was created pursuant to Mayoral Executive Order 11 of 1990 and Chapter 34 of the New York City Charter and operates independently of the Chancellor and the Department of Education.").

respective employees." Romero v. City of N.Y., 839 F. Supp. 2d 588, 602 (E.D.N.Y. 2012). However, any claims against the SCI and the DOI are dismissed, as they are improper parties.

## B. Res Judicata and Collateral Estoppel

Defendants argue that all of defendants' claims are barred by the Smith I decision under the preclusion doctrines of res judicata and collateral estoppel.

### 1. Res Judicata

The doctrine of res judicata, also known as claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). A defendant asserting res judicata must show "that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015) (brackets and internal quotation marks omitted).

### a.  Adjudication on the Merits

Here, the first two elements of the res judicata test are plainly satisfied.    Clearly, "summary judgment is an adjudication on the merits for res judicata purposes," <u>Rafter v. Liddle</u>, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010), and thus <u>Smith I</u> was an adjudication on the merits.

### b.  Identity or Privity of Parties

The second requirement of privity is also met.  The parties in the two actions are either the same (in the case of Smith and the DOE) or are in privity with each other.   In this context, privity requires that "the new defendant [have] a sufficiently close relationship to the original defendant to justify preclusion."  <u>Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.</u>, 56 F.3d 359, 368 (2d Cir. 1995).   "Government officials sued in their official capacities are generally considered to be in privity with the government entity that they serve."  <u>Johnson v. Cty. of Nassau</u>, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007).    Here, therefore, the City (the proper defendant in this action respecting SCI's allegedly wrongful acts), is in privity with the Special Commissioner of Investigation and the Deputy Commissioner for SCI, who were named in <u>Smith I</u> in both individual and official capacities.

### c. Same or Sufficiently Related Claim

Similarly, the Smith I claims were sufficiently related to the claims in this case to justify the application of res judicata.  A claim that "could have been raised in the prior action" is precluded by a prior judgment if the purportedly new claim "was sufficiently related to the claims that were asserted in the first proceeding that it should have been asserted in that proceeding."  Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (emphasis omitted).  The transactional approach followed in the Second Circuit treats a new claim as precluded if it is based on the "same transaction or occurrence," TechnoMarine, 758 F.3d at 499, or "nucleus of operative fact," Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997) (internal quotation marks omitted), as the claims in the prior action. "To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  Interoceanica, 107 F.3d at 91 (quoting Restatement (Second) of Judgments § 24(b) (1982)).  In other words, the issue "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and

14

whether the facts essential to the second were present in the first." Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) (internal quotation marks omitted).

Here, the factual allegations in Smith's present complaint overlap almost entirely with those addressed on the merits in Smith I. In Smith I, as in this case, Smith alleged that while assigned to the Museum School, he complained to Principal Uehling that he had been asked to teach dangerously large classes, and that Uehling responded not by taking action to address Smith's underlying concern but by giving Smith negative performance evaluations. (Compare Pr. Compl. ¶¶ 33-36, with Compl. ¶¶ 14-15.) In Smith I, as in this case, Smith claimed that his negative performance reviews were a pretext for DOE employees' intention to suspend and attempt to terminate him in violation of anti-retaliation laws. (Compare, e.g., Pr. Compl. ¶¶ 43, 93-95, 97, 99, 105, with Compl. ¶¶ 16, 39, 41-43.) In Smith I, as in this case, Smith alleged that Kearney falsely accused Smith of threatening Tillem and that SCI improperly credited Kearney's accusation, leading to a second set of disciplinary charges against Smith. (Compare Pr. Compl. ¶¶ 55-66, with Compl. ¶¶ 20-27.) Thus, the claims in this case involve substantially the same transactions that were involved in Smith I. Proof of these claims would depend upon substantially the same facts and evidence. That Smith has now

15

asserted different legal theories for recovery does not help him, for "a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories." Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000).

However, Smith I is only res judicata as to claims that had arisen through June 2, 2010, the date of the Prior Complaint. "[A] claim that arose after a suit was commenced but prior to judgment is [not] barred by res judicata if not pursued through a supplemental pleading." S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1465 (2d Cir. 1996); see also Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997) ("The res judicata doctrine does not apply to new rights acquired during the action which might have been, but were not, litigated."). In the prior action, Smith submitted a proposed complaint dated July 14, 2010, which would have added an allegation that Smith had been terminated from employment (see Lewis Aff. Ex. A, at ¶ 81), but as explained at note 7 above, the Court disregarded that version of the complaint because Smith had not sought permission to file it. See Smith I, 808 F. Supp. 2d at 574 n.2. Moreover, although the Smith I opinion noted, based on the City's Rule 56.1 statement of undisputed facts, that Smith had been terminated, see id. at 576, that opinion did not address any wrongful termination claim. Nor is

16

it logical that Smith could have brought a claim for wrongful termination before he was in fact terminated.   Under the circumstances, res judicata does not bar Smith's claims arising from his allegedly wrongful termination in June 2010. Nonetheless, for the following reasons, those claims are barred by the related doctrine of collateral estoppel.

### 2. Collateral Estoppel

Collateral estoppel, also known as issue preclusion, bars relitigation of specific factual or legal issues in a subsequent proceeding "where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001) (brackets and internal quotation marks omitted); see, e.g., Smith I, 808 F. Supp. 2d at 577-78.   In Smith I, this Court concluded that the factual findings in the § 3020-a hearings collaterally estopped Smith from making out a prima facie case of discrimination or retaliation under the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA").   That legal

conclusion in Smith I is, in turn, entitled to collateral estoppel effect in this case.

Specifically, in Smith I, this Court held that the findings of the § 3020-a hearings were entitled to collateral estoppel effect. See id. at 580 (citing Burkybile v. Bd. of Educ., 411 F.3d 306, 308 (2d Cir. 2005)). This Court then held that those findings "bar[red] [Smith's] federal discrimination claims." Smith I, 808 F. Supp. 2d at 580. In particular, this Court concluded that "in finding Smith guilty of the . . . charges and rejecting Smith's arguments that Principal Uehling and others manufactured the charges against him, the parties actually litigated and the hearing officers actually decided that any adverse employment action was justified and not based on impermissible discrimination." Id. Further, "because the hearing officers concluded that there existed just cause for the adverse employment actions, those officers actually decided that Smith cannot make out a prima facie case of discrimination nor can he put forth evidence of pretext." Id.

Similarly, this Court concluded that due to the hearing officers' findings "that Smith had engaged in misconduct, time and attendance abuse, had otherwise neglected his classroom duties, and had uttered death threats against another hearing officer," all of which amounted to "just cause for taking adverse employment action against Smith," Smith was "precluded

from relitigating these central issues, and therefore [could not] establish a causal connection between any protected activity and the adverse employment actions for the purpose of a discrimination claim." Id. at 582. These conclusions concerning the preclusive effect of the § 3020-a hearings were the principal basis for the dismissal of the federal statutory claims in Smith I.

The conclusion in Smith I that the § 3020-a hearing decisions precluded Smith from making out a prima facie case for employment retaliation under the ADA and the ADEA itself precludes Smith from arguing that he can make out a prima facie case for First Amendment retaliation. No matter what the source of law, a prima facie case of retaliation requires the defendant to "establish a causal connection between [the] protected activity and the adverse employment actions." Smith I, 808 F. Supp. 2d at 582; see, e.g., Smith v. Cty. of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (First Amendment retaliation). Having failed to establish a causal connection in Smith I, Smith is not entitled to relitigate the issue. Similarly, Smith's claim for wrongful termination, which is based on a theory of First Amendment retaliation, is not viable. Smith's inability to prove the casual element of retaliation similarly precludes him from establishing that defendants breached any contractual

promise to refrain from retaliating for whistleblowing, and therefore bars Smith's claim for breach of contract.

## C.   Failure to State a Claim

Defendants argue that Smith fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 and ERISA. Specifically, defendants argue that (1) Smith fails to state a claim for First Amendment retaliation because the speech alleged in his complaint was made pursuant to his official duties as a teacher and not on matters of public concern and, therefore, was not protected by the First Amendment; and (2) that the protections of ERISA do not apply to Smith's pension and retirement benefits because ERISA does not cover governmental benefit plans.[11]

### 1. First Amendment Retaliation

To plead a claim of retaliation in violation of the First Amendment, a public employee plaintiff must allege (1) that he engaged in activity protected by the First Amendment; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action.  See Smith v. Cty. of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015); Winters v. Meyer, 442 F. Supp. 2d

---

[11]   Defendants' arguments that the § 1983 and breach-of-contract claims are time-barred are discussed separately in Part III.D below.

82, 86-87 (S.D.N.Y. 2006).  Here defendants challenge that Smith engaged in protected activity.

The First Amendment only protects a public employee's speech when "the employee [speaks] as a citizen on a matter of public concern."  Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  This test has two elements, both of which must be satisfied.  First, the employee must speak "'as a citizen' rather than solely as an employee."  Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011).  "[W]e ask two questions to determine whether a public employee speaks as a citizen:  (A) did the speech fall outside of the employee's 'official responsibilities,' and (B) does a civilian analogue exist?"  Matthews v. City of N.Y., 779 F.3d 167, 173 (2d Cir. 2015).  Second, the employee must speak on a matter of public concern.  This demands speech that, taking into account its "content, form, and context," Connick v. Myers, 461 U.S. 138, 147 (1983), "can be fairly considered as relating to any matter of political, social, or other concern to the community, or [that] is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public," Lane v. Franks, 134 S. Ct. 2369, 2380 (2014) (internal quotation marks omitted).[12]

_____

[12]   If both of these tests are satisfied, then the next step is to apply a balancing test to determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other

Construed liberally, the Complaint alleges that two kinds of speech led to adverse employment action.  The first is Smith's complaint to Principal Uehling that his classes were dangerously overenrolled.  However, it is well established that a teacher's communications made within internal school channels about the teacher's working conditions and the treatment of the teacher's students, are deemed to be pursuant to the teacher's official duties and therefore do not constitute First Amendment protected speech.  See, e.g., Weintraub v. Bd. of Educ., 593 F.3d 196, 202-05 (2d Cir. 2010) (teacher's union grievance concerning principal's failure to discipline student were not protected speech); Massaro v. N.Y.C. Dep't of Educ., 481 F. App'x 653, 655-56 (2d Cir. 2012) (teacher's complaints regarding sanitary and health conditions in her classroom were not protected speech); Woodlock v. Orange Ulster B.O.C.E.S., 281 F. App'x 66, 68 (2d Cir. 2008) (counselor's communications regarding lack of physical education and art classes were not protected speech); Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007) (athletic director's memorandum questioning mismanagement of athletic department funds were not protected speech); Dorcely v. Wyandanch Union Free Sch. Dist., 665 F. Supp. 2d 178, 207 (E.D.N.Y. 2009) (teacher's complaints

---

member of the general public." Garcetti, 547 U.S. at 418 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

of insufficient educational and instructional resources and inappropriate curriculum were not protected speech). Smith's complaints to his principal that his classes were dangerously overenrolled cannot be distinguished from the unprotected speech in those precedents. Thus, Smith's complaints were not protected by the First Amendment and accordingly cannot support a First Amendment retaliation claim.

The second type of speech alleged in the Complaint involves Smith's complaint to Schools Chancellor Klein and later to SCI. Communications made directly to the DOE's leadership and to an outside investigatory agency are arguably analogous to citizen speech. Cf. Weintraub, 593 F.3d at 204 (distinguishing "complaint[s] to an elected representative or inspector general" from "internal communication[s]"). However, Smith's complaints that he personally had been mistreated could not fairly be described as statements on matters of "public concern." A single public employee's attempt to "redress personal grievances" lacks a "broader public purpose." Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999); see, e.g., Connick v. Myers, 461 U.S. at 148 (questions that comprised a "mere extension[] of [the plaintiff's] dispute" with her employer did not address matters of "public import"); Singer v. Ferro, 711 F.3d 334, 340 (2d Cir. 2013) ("The First Amendment does not protect all private ventings of disgruntled public employees.").

In sum, none of Smith's speech alleged in the Complaint was protected by the First Amendment.   Therefore, the claim for First Amendment retaliation is not a claim upon which relief can be granted.


### 2. ERISA

Smith alleges that defendants interfered with his rights to teachers' pension and retirement plan benefits in violation of section 510 of ERISA, 29 U.S.C. § 1140.   But "governmental plans," including any "plan established or maintained for its employees . . . by the government of any State or political subdivision thereof," are exempt from ERISA's coverage.   29 U.S.C. §§ 1002(32), 1003(b)(1); see Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 913-15 (2d Cir. 1987) (describing history and construction of the "governmental plan" exception); see, e.g., Grant v. Teacher's Ret. Sys. of City of N.Y., No. 07 Civ. 5534 (GEL), 2007 WL 3145093, at *5 (S.D.N.Y. Oct. 25, 2007) (concluding that the Teachers Retirement System is a governmental plan that is exempt from ERISA).   Therefore, the ERISA claim is not a claim upon which relief can be granted.


### D.   Statutes of Limitations

Defendants argue that the § 1983 and contract claims are time-barred under the applicable statutes of limitations.

**1. Section 1983**

In New York, the statute of limitations for a § 1983 claim is three years.  See Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015).  A long line of Second Circuit precedent has applied a discovery rule in this context, holding that a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  E.g., Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013); Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002); Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980).[13]

Here, although Smith alleges that he was terminated from employment in June 2010 (see Compl. ¶ 29), he did not commence this lawsuit until April 11, 2014.  Smith attempts to avail himself of the discovery rule by alleging that he "only recently discovered for the very first time on July 28, 2014" that the DOE placed him on a "no hire list."  (Compl. ¶ 30; see Pl.'s Mem. 20-21.)  This is not sufficient to bring Smith's claim within the statute of limitations for three reasons.  First, Smith's allegation that he only recently learned that he was on a "no hire" list is contradicted by his own Prior Complaint,

---

[13]    But see Pipitone v. City of N.Y., 57 F. Supp. 3d 173, 186 n.15 (E.D.N.Y. 2014) (questioning the "continued viability" of the discovery rule in light of the holding in Wallace v. Kato, 549 U.S. 384, 388 (2007), that a § 1983 claim accrues "when the plaintiff has a complete and present cause of action").

which alleged that he was "placed on the Ineligible/Inquiry list." (Pr. Compl. ¶ 52.) Smith does not contradict the City's suggestion that the "no hire" and "Ineligible/Inquiry" lists are the same thing. Accordingly, Smith's current allegation need not be accepted as true. See VFS Fin., Inc. v. Falcon Fifty LLC, 17 F. Supp. 3d 372, 379 (S.D.N.Y. 2014) ("Allegations in the pleading that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness." (quoting Kirkendall v. Halliburton, Inc., 707 F.3d 173, 175 n.1 (2d Cir. 2013)). Second, there can be no serious doubt that Smith knew of his termination from employment when it happened. That Smith later found out about a collateral consequence of that termination does not toll the running of the limitations period. A § 1983 cause of action "accrues even though the full extent of the injury is not then known or predictable." Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) (quoting Wallace v. Kato, 549 U.S. 384, 392 (2007)). Third, and most straightforwardly, because Smith brought this action in April 2014, it cannot be the case that he discovered his claims in July 2014.[14] Accordingly, Smith's § 1983 claim is time-barred.

---

[14] The original complaint in this action included claims for First Amendment retaliation and breach of contract.

## 2. Breach of Contract

Under New York Education Law § 3813(2-b), non-tort claims against schools, school districts, boards of education, and their officers are subject to a one-year statute of limitations. See Reg'l Econ. Cmty. Action Program, Inc. v. Enlarged City Sch. Dist. of Middletown, 18 N.Y.3d 474, 479 (2012); Sotomayor v. City of N.Y., 862 F. Supp. 2d at 249.  In New York, "[a] cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach." Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007); see also ACE Sec. Corp. v. DB Structured Prods, Inc., 25 N.Y.3d 581, 594 (2015) (rejecting "the 'discovery' rule [as] to statutes of limitations in contract actions").  Smith's claim for breach of contract against DOE is therefore time-barred.[15]

### CONCLUSION

To summarize:  The DOI and SCI are improper defendants because they lack the capacity to be sued; the § 1983 and breach-of-contract claims are barred by res judicata or collateral estoppel and also by the applicable statutes of limitations; and the § 1983 and ERISA claims fail to state a claim upon which relief can be granted.  Therefore, defendants'

---

[15]   Smith does not allege the existence of any contract other than his employment, which, as discussed above, was with the DOE and not the City. Thus, there is no plausible claim for breach of contract against the City.

motion to dismiss (Doc. No. 19) is granted and the Second Amended Complaint is dismissed with prejudice. The Clerk of Court shall enter judgment.

**IT IS SO ORDERED.**

Dated:     New York, New York
           September _3_, 2015

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Plaintiff**
Theodore Smith
420 E. 61st Street, Apt. 37C
New York, NY 10065

**Attorneys for Defendants**
Aliza J. Balog, Esq.
Mark Osmond, Esq.
NYC Law Department
Office of the Corporation Counsel
100 Church Street
New York, NY 10007